UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRUCE S. POLLAK,         )<br>                          )<br>     Plaintiff,           )<br>                          )     Civil No.<br>     v.                   )     13-12114-FDS<br>                          )<br>FEDERAL INSURANCE COMPANY, )<br>                          )<br>     Defendants.          )<br>                          )| |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

SAYLOR, J.

    This is a dispute as to whether an insurance policy covers losses incurred by a third party. Plaintiff Bruce Pollak alleges that he supplied funds to EMS Financial Services, LLC, to be held in escrow, and that EMS misappropriated that money.[1] EMS had an insurance policy with Defendant Federal Insurance Company that provided coverage for certain losses caused by criminal conduct. On July 31, 2013, Pollak filed suit against Federal, contending it was under an obligation to pay him insurance proceeds under EMS's policy. He further contended that Federal's refusal to settle his insurance claim violated the insurance policy contract and Massachusetts law.

    Defendant filed a motion to dismiss on September 11, 2013. For the following reasons, that motion will be granted.

---

[1] EMS is not a party to this litigation.

**I.     Background**

The facts are set forth as alleged in the complaint unless otherwise noted.[2]

**A.     Factual Background**

Plaintiff Bruce Pollak entered into a Disbursement Manager Agreement ("the Agreement") with EMS Financial Services, LLC, a global funds disbursement company. EMS served as an escrow agent between telecommunications parties. Under the terms of the Agreement, EMS was to hold Pollak's funds in escrow, to be disbursed only when specific conditions were met.

Pollak deposited a sum of $1,325,000 with EMS to be held in escrow. He alleges that EMS misappropriated and mismanaged those funds in violation of the Agreement, resulting in the complete loss of his funds. He also alleges that a third party used computer fraud against EMS, causing it to lose the money.

Defendant Federal Insurance Company provided insurance coverage to EMS under a Federal Pro Errors and Omissions policy numbered 8223-2057 ("the E&O Policy") and a Federal ForeFront Portfolio Crime Coverage Policy numbered 8222-9337 ("the Crime Coverage Policy"). Federal has refused to pay out any insurance claims to Pollak or enter negotiations to settle those claims.

**B.     Procedural Background**

On October 21, 2011, Pollak filed a complaint against EMS in the United States District

---

[2] On motions to dismiss, courts can properly take into account documents attached to or incorporated into the complaint, facts susceptible of judicial notice, concessions in a plaintiff's response to the motion to dismiss, and official public records. *Newman v. Krintzman*, 723 F.3d 308, 309 (1st. Cir. 2013); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Any facts considered by the Court that were not alleged in the complaint fall under one or more of these categories.

Court for the Middle District of Pennsylvania. *Pollak v. EMS Financial Services*, Case No. 11-cv-01969-YK.[3]  (Def's Mot. to Dismiss, Ex. C, Docket No. 1).  On January 4, 2012, the Middle District entered a default judgment against EMS for failure to defend.  (*Id.*, Docket No. 6).  On March 1, 2012, EMS filed a motion to set aside entry of default.  (*Id.*, Docket No. 9).  In its pleadings, EMS contended that Pollak's losses were the result of surreptitious actions by third parties who circumvented EMS's computer software.

On March 6, 2012, and prior to resolution of the default issue, EMS filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of New York.  *In re EMS Financial Services, LLC*, Bankr. Pet. #8-12-71324-AST.  (*Id.*, Ex. E, Docket No. 1).  The bankruptcy court stayed the Pennsylvania litigation on March 26, 2012.  (*Id.*, Docket No. 16).

On May 9, 2013, the bankruptcy court granted Pollak relief from the automatic stay to continue the litigation in Pennsylvania.  (*Id.*, Ex. F).  The bankruptcy court also allowed Pollak to move for a change of venue from Pennsylvania to Rhode Island.  (*Id.*).  His claims in that case are still pending.  (*Id.*, Ex. E).

Pollak filed this case on July 31, 2013, in Suffolk County Superior Court.  The complaint was served on Federal on August 2, 2013.  Federal timely removed the action on August 28, 2013.

## II. <u>Standard of Review</u>

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing

---

[3] A court may take into account public court documents filed in earlier court proceedings when considering a motion to dismiss. *Newman*, 723 F.3d at 309.

*Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### III.  Analysis

The complaint asserts three claims against defendant:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) violation of the Massachusetts consumer-protection statute, Mass. Gen. Laws ch. 93A.  All three claims are premised on defendant's failure to pay or settle plaintiff's claims under the Crime Coverage Policy.[4]

#### A.  Breach of Contract

Plaintiff contends that defendant breached the Crime Coverage Policy by failing to settle his insurance claim for the money lost by EMS.  The claim relies on the theory that he is entitled to enforce the Agreement as a third-party beneficiary.

"Under Massachusetts law, only intended beneficiaries, not incidental beneficiaries, can enforce a contract." *Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of*

---

[4] Initially, plaintiff also contended violations of the E & O Policy.  At oral argument, he voluntarily dropped those claims.

4

*Harvard College*, 413 Mass. 66, 71 (1992).[5]  Massachusetts law follows the Restatement (Second) of Contracts to determine whether a beneficiary is intended or incidental.  *Public Serv. Co. of N.H. v. Hudson Light & Power Dep't*, 938 F.2d 338, 341 (1st Cir. 1991) (citing *Rae v. Air-Speed, Inc.*, 386 Mass. 187, 194-95 (1982)) (explaining Massachusetts law).

The Restatement explains the difference between intended beneficiaries and incidental beneficiaries as follows:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance . . . .  An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1981).  While an intended beneficiary of a promise has standing to enforce a duty of performance, an incidental beneficiary acquires no rights against the contracting parties.  *See id.* §§ 304, 315; *Miller v. Mooney*, 431 Mass. 57, 62 (2000).

The intent of the contracting parties is the central inquiry in determining whether a non-party may maintain an action as a third-party beneficiary.  *Markel Serv. Ins. Agency, Inc. v. Tifco, Inc.*, 403 Mass. 401, 405-06 (1988).  "It must appear from 'the language and the circumstances of the contract' that the parties to the contract 'clearly and definitely' intended the beneficiaries to benefit from the promised performance."  *Miller*, 431 Mass. at 550 (quoting *Anderson v. Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 366-67 (1997)) (internal alternations omitted).

The contract in this case is the Crime Coverage Policy issued by Federal to EMS.  In its

---

[5] The parties did not dispute that the motion to dismiss should be decided under Massachusetts law.

insuring clauses, the policy states: "The Company [Federal] shall pay the Parent Corporation [EMS] for a direct loss sustained by an Insured [EMS] resulting from Computer Fraud committed by a Third Party." (Def's Mot. to Dismiss, Ex. B § I(E), at *30).[6] The policy defines "Computer Fraud" as "the unlawful taking of Money, Securities, or Property resulting from a Computer Violation." (*Id.* § II(D), at *31). Plaintiff is not mentioned anywhere in the policy and is not directly insured by the policy. The policy only obligates Federal to make payment to EMS in the event of any losses.

The language of the Crime Coverage Policy does not show a clear and definite intent that plaintiff was an intended beneficiary of the policy. Although it may have been clear from the start that plaintiff could derive an incidental benefit from the Crime Coverage Policy if something went awry, there is no question that Federal was required to direct all payments to EMS if a valid insurance claim were brought. (Ex. B § I(E), at *30).

Plaintiff contends that "EMS as the insured is liable to the plaintiff for loss of his funds and as a result is the direct intended beneficiary of the policy." Pl.'s Opp. at 6. He also contends that EMS increased its insurance coverage at his insistence. These contentions do not change the third-party beneficiary analysis. The Restatement specifically addresses a similar circumstance:

> B promises to pay A whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D, and E. If the promise is interpreted as a promise that B will pay C, D, and E, they are intended beneficiaries under Subsection(1)(a); if the money is to be paid to A in order that he may be provided money to pay C, D, and E, they are at most incidental beneficiaries.

Restatement (Second) of Contracts § 302(1)(a), cmt. b, illus. 3; *see also Kaufmann v. Alcatel USA Marketing, Inc.*, 65 Mass. App. Ct. 1115, at *6 (Jan. 27, 2006) (unpublished decision).

---

[6] The complaint incorporates the Crime Coverage Policy by reference.

Accordingly, "Massachusetts courts steadfastly have refused to accord intended beneficiary status under a contract whose terms, interpreted in the particular transactional setting, do not provide for the benefits of a performance to flow directly to a third party." *Public Serv. Co. of N.H. v. Hudson Light and Power Dept.*, 938 F.2d 338, 343 (1st Cir. 1991) (collecting cases).

Here, defendant agreed to pay EMS money under the Crime Coverage Policy if it suffered losses from a third party's computer fraud. EMS could—but was not required to—use that money to pay its own creditors. Defendant is not obligated to pay EMS's creditors under the insurance policy. An EMS creditor is therefore, at most, an incidental beneficiary under the insurance contract.

Because plaintiff is merely a creditor of EMS, the benefits of the Crime Coverage Policy do not flow to him. Even if he convinced EMS to increase its coverage when it bought the insurance policy, he was still not an intended beneficiary under the policy. At most, plaintiff is an incidental beneficiary to the contract, and is without standing to bring a breach of contract claim.[7]

### B.      Breach of the Implied Covenant of Good Faith and Fair Dealing

In Massachusetts, "[t]he covenant of good faith and fair dealing is implied in every contract." *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). "Such a covenant requires 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Blank v.*

---

[7] Plaintiff's other contentions do not contravene this conclusion. Though plaintiff contends the ownership section of the Crime Coverage Policy contemplates insurance claims from entities other than the insured, that section only defines what property defendant is insuring and does not authorize insurance claims by creditors of EMS. (Ex. B § IV(A), at *38). Plaintiff also contends there would be no redress under this interpretation of the policy if the insured were not available, missing, deceased, or incapacitated. However, there is no reason the insured's successor-in-interest could not pursue the insurance claim.

*Chelmsford OB/GYN, P.C.*, 420 Mass. 404, 407 (1995) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-72 (1991)).  The covenant cannot, however, "create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *T.W. Nickerson, Inc. v. Fleet Nat. Bank*, 456 Mass. 562, 570 (2010) (quoting *Uno Restarants*, 441 Mass. at 385).

As noted, only intended beneficiaries, not incidental beneficiaries, can enforce the terms of a contract.  *Harvard Law Sch. Coalition for Civil Rights*, 413 Mass. at 71.  Because plaintiff is not an intended beneficiary under the Crime Coverage Policy, he has no contractual rights against defendant.  Accordingly, he cannot bring a claim for breach of the implied covenant of good faith and fair dealing.  *See Rymes Heating Oils, Inc. v. Springfield Terminal Ry., Inc.*, 265 F. Supp. 2d 147, 151 (D. Mass. 2003) (no implied contractual duty of good faith and fair dealing owed to a non-party under Massachusetts law unless it is an intended beneficiary of the contract).

### C.  **Violations of Chapter 93A**

Plaintiff brings his final claim under the Massachusetts consumer-protection statute, Mass. Gen. Laws ch. 93A § 11.  He alleges that defendant's refusal to settle his insurance claim constitutes an unfair and deceptive insurance practice prohibited by Mass. Gen. Laws ch. 176D § 3(9).  Defendant contends that because plaintiff is not an intended beneficiary of the contract, he cannot bring a claim under Chapters 176D and 93A.

Because plaintiff is not an intended beneficiary under the Crime Coverage Policy, he cannot bring a consumer-protection claim.  It is true that standing for violations of Chapter 176D

"does not depend on a party's status as an insured or a third-party claimant." *Clegg v. Butler*, 424 Mass. 413, 419 (1997). In addition, a claim under Mass. Gen. Laws ch. 93A § 11 does not require privity between a plaintiff and defendant. *In re Pharm. Indus. Average Wholesale Price Lit.*, 582 F.3d 156, 192-93 (1st Cir. 2009) (explaining Massachusetts law). However, third-party claimants only have standing if their rights under the insurance policy are affected. *See Clegg*, 424 Mass. at 418-19 (citing *Flattery v. Gregory*, 397 Mass. 14, 150 (1986)).

"Without liability under the policy, there cannot be a violation of Chapter 93A." *Stor/Gard, Inc. v. Strathmore Ins. Co.*, 2012 WL 1609548, at *21 (D. Mass. May 4, 2012) *aff'd on other grounds,* 717 F.3d 242 (1st Cir. 2013) (citing *Falmouth National Bank v. Ticor Title Insurance Co.*, 920 F.2d 1058, 1065 (1st Cir.1990) (finding no breach of title insurance contract and therefore plaintiffs failed to state a claim for violation of Chapter 93A); *Connell v. Plastridge*, 2012 WL 895910, at *4 (Mass. App. Ct. March 19, 2012) (where underlying contract claim fails so does the claim under Chapter 93A)). Plaintiff is not an intended beneficiary of the Crime Coverage Policy. Because Federal is not liable to plaintiff under the Crime Coverage Policy, plaintiff does not have the right to bring insurance claims under the policy, much less the right to demand settlement for insurance claims. Accordingly, he cannot bring a claim under Chapters 93A and 176D against Federal.[8]

## VI. Conclusion

For the foregoing reasons, defendant's motion is GRANTED.

---

[8] The parties also dispute (1) whether the alleged Chapter 93A violation occurred primarily and substantially in the Commonwealth, (2) whether Federal is bound by alleged judicial admissions made in other proceedings, (3) whether Federal is estopped from contesting coverage due to failure to issue a reservation of rights letter, (4) whether liability under the policy is reasonably clear under Chapter 176D, and (5) whether proceeding with claims under the Crime Coverage Policy would violate the stay in EMS's bankruptcy proceeding. The Court does not reach any of those issues.

**So Ordered.**

                                                        /s/ F. Dennis Saylor
                                                        F. Dennis Saylor IV
Dated: November 21, 2013                United States District Judge